**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HSBC Bank USA, National Association, as Trustee for the Certificateholders of ACE Securities Corp. Home Equity Loan Trust, Series 2007-MW1, Asset-backed Pass-through Certificates,

Plaintiff

v.

Fidelity National Title Group, Inc., et al.,

Defendants

Case No.: 2:20-cv-01515-JAD-BNW

**Order Remanding Case to State Court**

[ECF Nos. 10, 11, 12, 13, 25, 26, 27, 34, 36, 41, 44]

Nevada's 2008 housing crash kindled thousands of quiet-title lawsuits between the homeowners associations (HOAs) that foreclosed on homes when the homeowner stopped paying HOA assessments, the banks that held the first-trust deeds on those homes, and the investors who snapped those homes up at bargain-basement prices. Having consumed the state and federal courts for more than half a decade now, those cases are burning out. But as they do, a phoenix rises from their embers: the banks now sue the title insurers that issued policies when the mortgages were originated for failing to defend them in those quiet-title suits and cover their losses.

This removed action is one of those phoenixes and, although newly filed, it has already amassed eleven motions. The title insurers move to dismiss the bank's claims and the bank moves for remand, for its fees and costs associated with that motion, to stay briefing on the title insurers' dismissal motions, (twice) for leave to file supplemental authorities supporting its remand motion, for leave to exceed the page limits for its brief in response to the dismissal motions, and for partial summary judgment on its claims for breach of contract and declaratory

relief. The remand motion is the centerpiece of this order. The title insurer removed this case before any defendant had been served with process. The propriety of this practice—termed "snap removal"—is a thorny question that has divided the courts. The bank challenges this practice in its motion for remand. I find that the removal here was improper because it occurred before any defendant had been served and the forum defendant is not fraudulently joined. I therefore grant the bank's motion for remand. I also grant the bank's motions for leave to file supplemental authorities in support of its motion for remand. But I deny the bank's motion for an award of fees and costs associated with remand. And because I remand this action back to state court, I deny as moot the parties' other pending motions.

## Discussion

### A. Legal standard

28 U.S.C. § 1441(a) authorizes defendants to remove to federal court "any civil action brought in a State court of which the [U.S. District Courts] have original jurisdiction . . . ." But "[f]ederal courts are courts of limited jurisdiction."[1] So defendants seeking removal jurisdiction "always have the burden of establishing that removal is proper."[2] This is a heavy burden to carry because there is a "strong presumption against removal jurisdiction[,]" the removal statute is "strictly construe[d] against removal jurisdiction[,]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[3]

[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[2] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

[3] *Id.*

**B. Analysis**

Fidelity National Title Insurance Company (FNTIC) removed this case on the ground that diversity jurisdiction exists.[4] Congress has created a limitation to diversity-based removal jurisdiction. 28 U.S.C. § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This limitation is called the forum-defendant rule, which is a "procedural, or non-jurisdictional, rule."[5]

In an effort to defeat the forum-defendant rule, FNTIC removed this case before any defendant had been served with process. The bank moves for remand, arguing that the snap-removal practice violates the forum-defendant rule, which applies here because one of the named defendants, Fidelity National Title Agency of Nevada, Inc. (Fidelity Nevada), is a Nevada citizen.[6] FNTIC argues in response that removing before any defendant has been served to defeat the forum-defendant rule is a permissible practice and, regardless, the forum-defendant rule does not apply because Fidelity Nevada is a fraudulently joined defendant.[7] I begin with the issue of fraudulent joinder.

***1. Fidelity Nevada is not a fraudulently joined defendant.***

Fraudulent joinder can be established two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

---

[4] ECF No. 1 at 2–3, ¶¶ 2–4.

[5] *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

[6] ECF No. 10.

[7] ECF No. 21.

diverse party in state court."[8] FNTIC relies on the second way, arguing that the bank sued Fidelity Nevada only to defeat removal on diversity grounds and cannot state a claim against it. "Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory."[9]  "But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."[10] Examining whether the fraudulent-joinder doctrine applies should not, therefore, entail a "searching inquiry into the merits of the plaintiff's case" against the forum defendant.[11]  This is because "the test for fraudulent joinder and the test for failure to state a claim under Rule 12(b)(6) are not equivalent."[12]

FNTIC argues that the bank's claims against Fidelity Nevada are certain losers because judges in this district have already resolved similar claims in favor of title insurers like it.[13]  But the banks did not name Fidelity Nevada in those cases.  Indeed, FNTIC admits that the banks are "taking a different tack" with this new batch of cases—"naming the local issuing agents behind the title policies . . . ."[14]  It also admits that the other cases "are now on appeal to the Ninth

---

[8] *Grancare, LLC v. Thrower, by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)) (internal quotation marks omitted).

[9] *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)) (internal quotation marks omitted).

[10] *Id.* (quoting *Hunter*, 582 F.3d at 1046) (internal quotation marks omitted).

[11] *Id.* at 548–49 (citing *Hunter*, 582 F.3d at 1046).

[12] *Id.*

[13] ECF No. 21 at 3–4 (collecting cases).

[14] *Id.* at 4.

Circuit . . . ."[15] For these reasons, the title insurers' prior success is not an "extraordinarily strong argument[ ] that [the bank] could not possibly prevail on [its] claims against the allegedly fraudulently joined defendant."[16]

FNTIC next contests the validity of the bank's alter-ego allegations and contract-based claims against Fidelity Nevada. But FNTIC largely overlooks the fact that the bank also asserts claims against Fidelity Nevada for deceptive trade practices under NRS 41.600 and 598.0915 and unfair claim-settling practices under NRS 686A.310. Nevada's Deceptive Trade Practices Act creates a right of action for victims of persons who "knowingly make a false representation as to the characteristics . . . of goods or services for sale" or "any other false representation made in a transaction."[17] NRS 686A.310 provides that "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue" is "an unfair practice[,]" and "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice."[18]

For those tort claims, the bank alleges that the "[d]efendants all represented to the public and to HSBC Bank's predecessor-in-interest that Form 9/Form 100 and Form 4/Form 115.1 provided coverage against losses caused by an association's superpriority lien."[19] "Fidelity of Nevada . . . made material misrepresentations to the Insured . . . ."[20] It was the intent of the

---

[15] *Id.*

[16] *See Grancare, LLC*, 889 F.3d at 548.

[17] Nev. Rev. Stat. § 598.0915(5), (15); *accord* Nev. Rev. Stat. § 41.600(2)(e) (defining "consumer fraud" to include "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925").

[18] Nev. Rev. Stat. § 686A.310(1)(a), (2).

[19] ECF No. 1-2 at ¶ 46; *accord id.* at ¶¶ 178–80.

[20] *Id.* at ¶ 114; *accord id.* at ¶¶ 178–80.

bank's predecessor, FNTIC, and Fidelity Nevada that Form 100 and Form 115.1 "would provide coverage for losses or damages sustained as a result of the CC&Rs."[21]  The bank buttresses these points by alleging that "[a]ll [d]efendants knew that public descriptions" of the relevant forms "indicated that coverage would be available if an insured mortgage lien was impaired or otherwise affected by enforcement of the association's superpriority lien."[22]  "FNTIC and Fidelity Nevada [allegedly] decided which endorsements should be issued with the [p]olicy."[23]  And yet, according to the bank's allegations, Fidelity National Title Group, Inc. repeatedly directed FNTIC to deny coverage under the policy.[24]  It's possible that a state court could find that these allegations state consumer-fraud or deceptive-trade-practices claims against Fidelity Nevada.

FNTIC's only argument about these claims is that "the misrepresentation cause of action with respect to the 2006 issuance" of the title policy is time barred.[25]  It supports this proposition by citing NRS 11.190(3)(d), which provides that "the cause of action in such a case shall be deemed to accrue upon the discovery of the aggrieved party of the facts constituting the fraud or mistake."[26]  FNTIC points out that it denied the bank's policy-coverage claim on August 16, 2016, but it does not argue—and has not demonstrated—that the bank's claims against Nevada Title accrued on the same date.  The bank argues in reply that its tort claims against Fidelity

---

[21] *Id.* at ¶ 136.
[22] *Id.* at ¶ 174.
[23] *Id.* at ¶ 175.
[24] *Id.* at ¶¶ 26, 89, 98.
[25] ECF No. 21 at 17.
[26] Nev. Rev. Stat. § 11.190(3)(d).

Nevada did not accrue until it discovered the "internal guides and manuals [that] effectively concede coverage[,]" which the bank contends "defendants hid."[27]

Based on this record, FNTIC has not established that the bank's tort claims against Fidelity Nevada are time barred. Nor has FNTIC otherwise met its burden to show that Fidelity Nevada was fraudulently joined. Because Fidelity Nevada is a properly joined forum defendant, § 1441(b)(2) applies and I proceed to determine if FNTIC's snap removal was proper.

***2. FNTIC's snap removal was improper under 28 U.S.C. § 1441(b)(2).***

FNTIC argues that snap removal is a permissible practice and, more to the point, a valid means to avoid the forum-defendant rule.[28] It insists that "every single" appellate court that has examined the issue has concluded that the plain language of § 1441(b)(2) is unambiguous and permits snap removal.[29] FNTIC tacitly acknowledges that the Ninth Circuit has not yet done so.[30] The bank argues that the "plain language" interpretation that FNTIC and its authorities offer is unacceptable because it cuts against the statute's purpose of preserving the plaintiff's choice of a state forum when at least one defendant is a citizen of that state.[31] The bank identifies several cases in which district courts have rejected snap removal in similar circumstances.[32]

---

[27] ECF No. 22 at 13–14 (citing ECF No. 1-1 at ¶¶ 35–42, which the court believes is a typo and intended to refer to the bank's complaint, which is on the docket ECF No. 1-**2**).

[28] ECF No. 21 at 9.

[29] *Id.* (citing *Texas Brine Company, LLC v. Am. Arbitration Ass'n*, 955 F.3d 482 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Restaurant, Inc.*, 902 F.3d 147 (3d Cir. 2018); *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001)).

[30] *Id.*

[31] ECF No. 22 at 2–7.

[32] *Id.* at 2–4 (collecting cases).

When interpreting federal statutes, "the starting point in discerning congressional intent is the existing statutory text . . . ."[33] "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[34] Courts are required to "presume that the legislature says in a statute what it means and means in a statute what it says there."[35]

Several appellate courts have determined, by focusing on the "properly joined and served" phrase in the statute, that § 1141(b)(2)'s "plain language allows snap removal" before any defendant has been served.[36] But not all courts agree. As U.S. District Judge Woodlock explained in *Gentile v. Biogen Idec, Inc.*, "the plain language of section 1441(b) requires at least one defendant to have been served before removal can be effected" because, grammatically, that is the stage that the statute sets with the phrase "none of the parties in interest properly joined and served as defendants . . . ."[37] Judge Woodlock interpreted the statute before its 2011 amendments altered the phrasing to "if any of the parties in interest properly joined and

---

[33] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

[34] *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (internal quotation marks omitted).

[35] *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)) (internal quotation marks and brackets omitted).

[36] *Texas Brine Company, LLC*, 955 F.3d at 486; *accord Gibbons*, 919 F.3d at 705 ("The statute plainly provides that an action may not be removed to federal court on the basis of diversity of citizenship once a home-state defendant has been "*properly* joined and *served*."); *Encompass Ins. Co.*, 902 F.3d at 152 (finding that the plain language of § 1441(b)(2) unambiguously "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served").

[37] *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316, 318–19 (D. Mass. 2013) (quoting 28 U.S.C. 1441(b) (2002)).

served[,]" but he found that those "amendments did not materially change the relevant language of the statute."[38] I agree.

Judge Woodlock elaborated that "none" means "not any" and "'[a]ny,' in turn, means 'one or more indiscriminately from all those of a kind.'"[39] So "[i]nherent in the definition is some number of the 'kind' from which the 'one or more' can be drawn."[40] Indeed, "the use of 'none'" followed by the "definite article 'the' when referring to 'parties' assumes that there is one or more party in interest that has been properly joined and served already at the time of removal, among which may or may not be a forum-state defendant."[41]

After carefully considering the parties' authorities, including those that the bank identifies in its motions for leave to file supplemental authorities,[42] I am not satisfied that the plain language of § 1441(b)(2) is unambiguous. I agree with my brethren, Judges Gordon and Mahan, that Judge Woodlock's interpretation "is the most cogent."[43] And because reasonable jurists have interpreted this statute differently from one another, I look beyond the statute's text to discern Congress's intent.[44]

---

[38] *Id.* at 316 n.2 & 318.

[39] *Id.* at 318 (quoting *Webster's Third New Intern. Dictionary* 1536 (3d. ed. 1986)).

[40] *Id.*

[41] *Id.*

[42] Due to the unsettled nature of the snap-removal issue, I grant the bank's motions for leave to file supplemental authorities supporting its motion for remand. ECF Nos. 27, 41.

[43] *Deutsche Bank National Trust Co. v. Fidelity National Title Grp, Inc.*, No. 2:20-cv-01606, 2020 WL 7360680, at *3 (D. Nev. Dec. 14, 2020); *accord Carrington Mortgage Servs., LLC v. Ticor Title Nevada, Inc.*, No. 2:20-cv-699, 2020 WL 3892786, at *3 (D. Nev. July 10, 2020).

[44] *See Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) ("If the language is ambiguous, we look to 'canons of construction, legislative history, and the statue's overall purpose to illuminate Congress's intent.") (quotation omitted).

"The removal power, and by extension the forum[-]defendant rule, is founded on the basic premise behind diversity jurisdiction itself"—"protect[ing] non-forum litigants from possible state court bias in favor of forum-state litigants."[45] But forum defendants do not suffer this bias and therefore do not need protection from it. And the presence of a forum defendant presumably mitigates concerns of state-court bias toward the plaintiff. So the forum-defendant "rule provides some measure of protection for a plaintiff's choice of forum" in certain circumstances.[46] "[W]hen the overarching concerns about local bias against the defendant" are absent, the rule allows "a plaintiff to move for a remand of the case to the state court . . . ."[47]

Courts agree that the legislative history does not explain why "properly joined and served" was added to the statute.[48] "Supreme Court jurisprudence at the time of the 1948 revision . . . suggests"[49] that this language was added to prevent the gamesmanship of a plaintiff "blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."[50] But with the advent of electronic dockets, sophisticated, monied, or hyper-vigilant defendants are monitoring court filings and removing before any defendant has been served, with the goal of eluding the forum-defendant rule. Congress reasonably would not have intended to prevent plaintiffs' removal-defeating games by creating a means for defendants to leapfrog over the forum-defendant rule.

---

[45] *Gentile*, 934 F. Supp. 2d at 319 (Judge Woodlock dove into the removal statute's history and purpose "for completeness of [his] explanation"); *accord Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).

[46] *Gentile*, 934 F. Supp. 2d at 319.

[47] *Id.*

[48] *See, e.g.*, *id.* at 319–20; *Encompass Ins. Co.*, 902 F.3d at 153.

[49] *Gentile*, 934 F. Supp. 2d at 319–20.

[50] *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003).

The removal statute's purpose is better served by precluding removal until at least one defendant has been served. That way "plaintiffs legitimately seeking to join a forum defendant face the modest burden of serving that defendant before any others."[51] A plaintiff who "serves a non-forum defendant before serving a forum" one "has effectively chosen to waive an objection to removal by a nimble non-forum defendant who thereafter removes the case" before it can be served.[52] And the non-forum defendant can still argue that the forum defendant was fraudulently joined.[53] This interpretation is faithful to the removal statue's entire purpose and consistent with its plain language. Applying this interpretation, I resolve that FNTIC's removal was premature because it occurred before any defendant had been served. I therefore remand this case back to state court.

***3. An award of fees and costs is not merited.***

The bank moves under 28 U.S.C. § 1447(c) for an award of the fees and costs it incurred seeking remand. That statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[54] The decision whether to award fees and costs associated with remand is left "to the discretion of the district court."[55] Although defendants' dismissal motions are mooted by my determination that FNTIC's snap-removal was improper, as I explained above, the propriety of snap removal is a controversial and divisive question that the Ninth Circuit has yet to answer.

---

[51] *Gentile*, 934 F. Supp. 2d at 322.

[52] *Id.*

[53] *Id.* at 322–23.

[54] 28 U.S.C. § 1447(c).

[55] *Gotro v. R & B Realty Grp*, 69 F.3d 1485, 1487 (9th Cir. 1995) (quoting *Moore v. Permanente Medical Grp, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992)).

Because FNTIC had an objectively reasonable basis for removal, I decline to award the bank the fees and costs it incurred because of the removal.[56]

**Conclusion**

IT IS THEREFORE ORDERED that the bank's motion for remand **[ECF No. 10]** and motions for leave to file supplemental authorities supporting that motion **[ECF Nos. 27, 41] are GRANTED**.

IT IS FURTHER ORDERED that the bank's motion for an award of fees and costs **[ECF No. 26] is DENIED**.

IT IS FURTHER ORDERED that the defendants' dismissal motions **[ECF Nos. 11, 12, 13]** and motion for leave to exceed page limits on its dispositive-motion briefing **[ECF No. 44]**; and the bank's motion to stay briefing on defendants' dismissal motions **[ECF No. 25]**, for leave to exceed the page limits **[ECF No. 34]**, and for partial summary judgment **[ECF No. 36] are DENIED** without prejudice as moot.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **REMAND this action back to the Eighth Judicial District Court for Clark County, Nevada, Case No. A-20-819620-C**, and CLOSE THIS CASE.

U.S. District Judge Jennifer A. Dorsey
December 22, 2020

[56] I deny the bank's motion for an award of fees and costs for the additional reason that it has not demonstrated the actual expenses that it incurred or what costs would be just in this situation.